UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAILTON DACOSTA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 21-cv-10024-DJC |
| ) | |
| MICHAEL RODRIGUES, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                     February 8, 2022

**I.   Introduction**

Petitioner Hailton DaCosta ("DaCosta" or "Petitioner"), acting *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"). D. 1. The Superintendent of MCI-Shirley ("Respondent") moves to dismiss the Petition on the basis that DaCosta's grounds for habeas relief are unexhausted. D. 15. For the reasons discussed below, the Court ALLOWS Respondent's motion to dismiss, D. 15, and DENIES the Petition, D. 1.

**II.   Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a petitioner raises a claim that was adjudicated on the merits in state court, federal habeas courts must defer to the state court's determination unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)). As an initial matter, a petitioner must show that he has exhausted all his state court remedies or, in the alternative, that the State did not offer appropriate

1

corrective measures. 28 U.S.C. § 2254(b)(1). To successfully carry the burden of proving exhaustion, Petitioner must demonstrate that he has "fairly and recognizably" presented his claim to the state's highest court, the Supreme Judicial Court in this case. Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000); Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997) (noting that "the decisive pleading [regarding exhaustion] is the application for further appellate review, and [the Court] must determine whether the petitioner fairly presented the federal claim to the [Supreme Judicial Court] within 'the four corners' of that application").

### III.   Relevant Factual and Procedural Background

The following facts are primarily drawn from the Massachusetts Appeals Court decision affirming DaCosta's conviction, Commonwealth v. DaCosta, 96 Mass. App. Ct. 105 (2019), and the appendix submitted with Respondent's motion to dismiss, D. 15-1, which includes materials from the state court record.

#### A.   Offense Conduct

On November 23, 2013, DaCosta and three others—Antonio Rodrigues ("Rodrigues"), Samir Baptista ("Baptista") and Elito Mendes ("Mendes")—executed a plan to rob drug dealer Sharone Stafford ("Stafford") in New Bedford. DaCosta, 96 Mass. App. Ct. at 106. During the robbery, DaCosta approached Stafford's car and opened the driver's door. Id. at 107. DaCosta and Stafford exchanged words and, when Stafford closed the door, DaCosta shot him twice through the car window, killing him. Id. DaCosta fled the scene with Mendes and Rodrigues in Mendes's car, while Baptista stayed behind. Id.

#### B.   Indictment and Jury Trial

DaCosta and Rodrigues were indicted for murder, armed assault with intent to rob and unlawfully possessing a firearm. Id. at 106. Baptista and Mendes agreed to cooperate with the

Commonwealth, pleaded guilty to various charges and testified against DaCosta and Rodrigues at a joint trial. Id.

During Baptista's testimony at trial, the Commonwealth introduced in evidence a surveillance video recording of Baptista speaking to a bartender at a club following the shooting. Id. at 108. The recording's audio revealed that Baptista asked the bartender if he could use her phone before stating that "[s]omebody got shot down the street." Id. In response to a question from the bartender, Baptista denied being the shooter. Id. The trial judge excluded the recording's audio on hearsay grounds, but admitted the video without audio which was shown to the jury during the trial. Id.

On the second day of deliberations, the judge received a note from the jury indicating that the audio portion of the recording had been included with the video and asking whether there was any issue with the jury listening to the audio. Id. at 108–09. DaCosta and Rodrigues moved for a mistrial. Id. at 109. The judge denied the motion. Id. DaCosta's counsel initially suggested an individual voir dire to determine how much of the audio each juror had heard but later agreed with the judge's decision first to ask the foreperson. Id. The foreperson returned to the courtroom and, in an unsworn statement, explained that the jury "just heard Baptista say someone shot someone outside. That's all we heard and we stopped it because we didn't hear that in here." Id. The foreperson confirmed that the jury heard nothing before or after that statement. Id.

Based upon the foreperson's responses, the judge denied the defendants' renewed motion for a mistrial. Id. DaCosta's counsel initially requested that the judge ask each juror individually whether they could abide by her instruction to strike the audio recording from their minds but ultimately agreed that the judge could ask the jury as a group. Id. When the jury returned to the courtroom, the judge reminded them that the audio portion of the recording had not been admitted

3

in evidence and explained that she had the foreperson brought in to determine how much of the audio the jury had heard.  Id.  She then instructed them "in very, very forceful terms that you are to strike whatever you heard, whatever portion of the audio that you heard from Exhibit 36 from your minds and you are not to consider it at all in your deliberations."  Id.  The judge asked if any juror was unable to follow those instructions and no juror responded affirmatively.  Id.

After a recess, the defendants renewed their request for a mistrial on the ground that the judge had not conducted an individual voir dire of the jurors.  Id.  The judge then offered to conduct an individual voir dire but the defendants declined, stating that doing so would call more attention to the issue at that point.  Id.  The judge denied the renewed motion for a mistrial.  Id.

The jury found DaCosta and Rodrigues guilty of unlawful possession of a firearm and felony murder in the second degree.  Id. at 106.  Both defendants appealed.  See id.

### C.   Direct Appeal

DaCosta raised several claims on direct appeal in addition to joining arguments raised in Rodrigues's appeals court brief.  See D. 15-1 at 23–24.  DaCosta and Rodrigues each argued that the trial judge violated both state and federal law by failing to conduct an individual voir dire to determine if the jurors could be impartial after hearing the surveillance recording's audio and by failing to grant a mistrial on that basis.  Id. at 24–35, 103–18.  Rodrigues also argued in his brief that the evidence presented was constitutionally insufficient to support a second-degree felony murder conviction because the Commonwealth failed to present evidence that the underlying felony carried a maximum penalty of less than life imprisonment.  Id. at 127–29.  Although only raised in Rodrigues's appeals court brief, this claim was considered also to have been raised by DaCosta based upon his joinder in all Rodrigues's arguments.  See id. at 54–55; Mass. R. App. P. 16(j)(2); DaCosta, 96 Mass. App. Ct. at 110 n.5.

On September 19, 2019, the Massachusetts Appeals Court affirmed both convictions. See DaCosta, 96 Mass. App. Ct. at 106. Addressing the jury's exposure to the excluded audio recording, the appeals court agreed with the defendants that the trial judge should have held an individual voir dire as required by Commonwealth v. Jackson, 376 Mass. 790 (1978), but held that the error was harmless and, therefore, did not require a mistrial. DaCosta, 96 Mass. App. Ct. at 111–12 (concluding that exposure to Baptista's recorded statement that "someone shot someone outside" could not have tainted the jury's verdict "where the jury had already heard the substance of that statement, the accuracy of the statement was not contested, and the jury also heard eyewitness testimony from two cooperating coventurers"). The appeals court also rejected the defendants' sufficiency of the evidence argument because criminal penalties are set by statute, and whether a felony can serve as a predicate for murder in the first or second degree is a question of law that the judge was not required to submit to the jury. Id. at 115–16. The appeals court further rejected the defendants' other claims of error. See id. at 109–18.

### D. DaCosta's Application for Further Appellate Review

On September 24, 2019, DaCosta filed an application for leave to obtain further appellate review ("ALOFAR") in the Supreme Judicial Court. See D. 15-1 at 156. Among other things, DaCosta again claimed that the trial judge erred in not holding an individual voir dire of the jurors after their exposure to the excluded audio recording and in not granting a mistrial on that basis, but he argued only that this error constituted a violation of state law. See id. at 162–64. DaCosta did not argue that there was insufficient evidence to support his second-degree felony murder conviction based upon the Commonwealth's failure to present evidence regarding the maximum penalty for the underlying felony. See id. at 162–71. He did attempt to incorporate by reference the arguments advanced in Rodrigues's appeals court brief. See id. at 170 (stating that DaCosta

joined all the arguments "contained in the brief of his codefendant, Antonio Rodrigues, as applicable to him").

The Supreme Judicial Court denied DaCosta's ALOFAR on November 14, 2019. Commonwealth v. DaCosta, 483 Mass. 1105 (2019).

### E. This Petition

DaCosta filed the Petition on January 6, 2021. D. 1. The Petition asserts the following grounds for relief: first, that DaCosta was deprived of his right to a trial by an unbiased jury by the prosecutor's exposing to the jury the excluded audio recording and by the trial judge's failure to conduct an individual voir dire of each jury member ("Ground I"); and second, that the evidence was constitutionally insufficient to support a finding beyond a reasonable doubt that DaCosta committed second-degree felony murder ("Ground II"). Id.; D. 2 at 16–36.

## IV. Discussion

Respondent argues that the Petition should be dismissed because DaCosta failed to exhaust all available remedies in the state courts on the claims raised in his Petition. See D. 16 at 7. DaCosta contends that his joinder in all the arguments contained in Rodrigues's brief filed with the Massachusetts Appeals Court satisfies the exhaustion requirement. See D. 18 at 2–3.

### A. Applicable Law

"To achieve exhaustion, 'a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim.'" Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (quoting Adelson, 131 F.3d at 262). The First Circuit has "identified at least five ways in which a habeas petitioner may satisfy the 'fair presentment' requirement," including "reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to

federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." Id. (citing Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994)).  Federal courts focus "on the likelihood that the presentation in state court alerted that tribunal to the claim's federal quality and approximate contours." Id. (emphasis omitted) (quoting Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir. 1989)) (internal quotation marks omitted).

In Barresi v. Maloney, 296 F.3d 48, 52 (1st Cir. 2002), the First Circuit stated that the analysis of whether claims raised in an ALOFAR satisfy the exhaustion requirement may involve consideration of "the pleadings and filings submitted by a habeas petitioner to lower state courts." Id.  The court noted that such filings can "provide a backdrop" against which to view the petitioner's later filings. Id. (citation and internal quotation marks omitted).  Still, Barresi "recognized the continued validity" of the rule that the petitioner must fairly present the federal claim within the "four corners" of the ALOFAR and "held that the 'backdrop' materials could only be consulted 'under certain circumstances.'" Clements v. Maloney, 485 F.3d 158, 163 (1st Cir. 2007) (quoting Barresi, 296 F.3d at 52).  Subsequent First Circuit decisions made clear that the Barresi "backdrop" rule applies in cases where the ALOFAR is "ambiguous about the federal nature of a claim." Id.

Two years after Barresi, the Supreme Court decided Baldwin v. Reese, 541 U.S. 27, 29–30 (2004), in which the defendant had petitioned for discretionary appellate review in the Oregon Supreme Court, arguing some claims based upon federal law and others based only upon state law. He did not assert in his petition that his ineffective assistance of appellate counsel claim stated a violation of federal law. Id. at 30.  On habeas review, the Court concluded that the defendant had not fairly presented his ineffective assistance claim to the state courts, holding that "where a federal

7

claim was not included in a petition, the exhaustion analysis could not encompass materials beyond the petition or brief filed with the state's highest court." Clements, 485 F.3d at 164 (summarizing holding in Baldwin, 541 U.S. at 32).

Since Baldwin, the First Circuit several times has questioned—but not yet decided—whether the Barresi approach to the exhaustion analysis survived Baldwin. See Jaynes v. Mitchell, 824 F.3d 187, 193 (1st Cir. 2016) (stating that "the 'backdrop' approach has . . . become problematical after Baldwin"); Janosky v. St. Amand, 594 F.3d 39, 51 (1st Cir. 2010) ("[a]ssuming, without deciding, that Barresi is still good law"); Clements, 485 F.3d at 164 (stating that "[t]he Barresi approach to the exhaustion analysis may be incompatible with Baldwin"); Josselyn v. Dennehy, 475 F.3d 1, 4 n.2 (1st Cir. 2007) (declining to "reach [the] question" of whether "Baldwin abrogates [the backdrop] rule"). For example, Clements concluded that, even assuming Barresi was consistent with Baldwin, its principles would not apply to a claim raised by a petitioner who failed to present the claim in his ALOFAR in federal law terms. Clements, 485 F.3d at 163–65. Because "[t]he portion of [the petitioner's] ALOFAR discussing this claim relied on no federal cases and did not label the claim as federal" and "also made no arguments using vague (and possibly federal law based) phrases, such as 'due process,'" the court determined that the ALOFAR was "not ambiguous" regarding the nature of the claim. Id. (noting that the claim was "unmistakably couched only in state law terms"). Accordingly, the court held that the petitioner had failed to exhaust the claim in state court. Id. at 167.

### B.  Right to Trial by an Unbiased Jury (Ground I)

Here, like in Clements, even if Barresi survived Baldwin, its "backdrop" approach would not apply to DaCosta's claim that he was deprived of his right to trial by an unbiased jury. Cf. Clements, 485 F.3d at 163–64. On this point, DaCosta's ALOFAR includes no citation to federal

8

case law or any federal constitutional right. See D. 15-1 at 162–64. It also "did not label the claim as federal" or make any arguments using "vague" phrases that would imply a foundation in federal law. See Clements, 485 F.3d at 163–64; D. 15-1 at 162–64. Instead, the ALOFAR cites only Jackson, 376 Mass. at 800 (establishing procedures under the Supreme Judicial Court's "general superintendence" power for "when a claim of potentially extraneous influence on a jury is brought to the judge's attention after the jury are selected") and Commonwealth v. Blanchard, 476 Mass. 1026, 1027 (2017) (applying principles set forth in Jackson). Accordingly, DaCosta's ALOFAR was "not ambiguous" as to whether it challenged the jury's exposure to the excluded audio recording on federal grounds. See Clements, 485 F.3d at 167. It did not.

It is insufficient that DaCosta raised the issue on both state law and federal law grounds in his appeals court brief, which referenced the right to an impartial jury under the Sixth Amendment. See D. 15-1 at 34–35; Adelson, 131 F.3d at 263 (noting that the petitioner must present the federal claim to the Supreme Judicial Court within "the four corners" of the ALOFAR). Further, DaCosta's reference to the arguments contained in Rodrigues's appeals court brief also fails to satisfy the requirements for an ALOFAR. See D. 15-1 at 170; D. 18 at 2–3. Although an appellant "may adopt by reference any part of the brief of another" on direct appeal, Mass. R. App. P. 16(j)(2), the Massachusetts Rules of Appellate Procedure dictate that a petitioner must include in his ALOFAR, among other things, "a statement of the points with respect to which further appellate review of the decision of the Appeals Court is sought" and "a brief statement . . ., including appropriate authorities, indicating why further appellate review is appropriate," id. 27.1(b). These rules do not permit a petitioner simply to state in his ALOFAR that he is reraising all the same arguments raised in either his own or his co-defendant's appeals court brief. See id.

Because DaCosta did not raise the issue of the jury's exposure to the excluded audio

9

recording on federal grounds in his ALOFAR, he failed to exhaust his state court remedies on the claim. Accordingly, Ground I is unexhausted.

### C. Sufficiency of the Evidence (Ground II)

DaCosta's ALOFAR omits entirely the claim that the Commonwealth presented insufficient evidence to support his conviction for second-degree felony murder because it did not produce evidence regarding the penalty for the underlying crime. See D. 15-1 at 156–72. DaCosta, nonetheless, argues that he fairly presented this claim in his ALOFAR by joining the argument as included in Rodrigues's appeals court brief. See D. 18 at 2–3; D. 15-1 at 54–55. As discussed above, such is insufficient to satisfy the exhaustion requirement, which requires that the petitioner present the federal claim to the Supreme Judicial Court within "the four corners" of the ALOFAR. See Adelson, 131 F.3d at 263; see also Mass. R. App. P. 27.1(b). DaCosta, therefore, failed to exhaust his state court remedies on his second claim. Accordingly, Ground II is also unexhausted.

## V. Conclusion and Certificate of Appealability

For the foregoing reasons, the Court ALLOWS Respondent's motion to dismiss, D. 15, and DENIES the Petition, D. 1.

A petitioner may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (internal quotation marks omitted). Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion denying the Petition debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability but will give Petitioner until March 1, 2022 to

file a memorandum if he seeks to address the issue of whether a certificate of appealability is warranted as to either or both grounds in the Petition.

      **So Ordered.**

/s/ Denise J. Casper
United States District Judge
